COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN (11170)
CHRISTOPHER M. BURKE (214799)
MARY LYNNE CALKINS (212171)
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
patc@csgrr.com
chrisb@csgrr.com
mcalkins@csgrr.com

BECK & LEE BUSINESS TRIAL
LAWYERS
ELIZABETH LEE BECK (233742)
JARED H. BECK (233743)
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone: 305/789-0072
786/664-3334 (fax)
elizabeth@beckandlee.com
jared@beckandlee.com

THE WESTON FIRM
GREGORY WESTON (239944)
5127 Lotus Street
San Diego, CA 92107
Telephone: 619/255-7098
480/247-4553 (fax)
greg@thewestonfirm.com

Attorneys for Plaintiffs
Soon Ja Chun, Bernard Jung Kim
and Elizabeth Bahn

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| In re KOREAN AIR LINES CO., LTD. ANTITRUST LITIGATION | MDL No. 1891<br><br>No. CV-07-06542-SJO(AGRx) |
| This Document Relates To:<br><br>INDIRECT PURCHASER ACTIONS. | SECOND AMENDED INDIRECT PURCHASER CLASS ACTION COMPLAINT<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiffs Soon Ja Chun, Bernard Jung Kim and Elizabeth Bahn ("Plaintiffs"), by and through the undersigned counsel, allege as follows upon information and belief of counsel, except as to those matters that are within their personal knowledge:

**JURISDICTION AND VENUE**

1. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because Korean Air Lines Co., Ltd ("Korean Air") and Asiana Airlines Co., Ltd. (Asiana") (collectively "Defendants"), are subjects of a foreign state, and further this Court has original jurisdiction over this action under 28 U.S.C. §1332(d)(2)(C) (The Class Action Fairness Act), in that this is a class action in which the matter of controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed classes are citizens of the Untied States and the Defendants are subjects of a foreign state.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2), (b)(2), (c), and (d) because during January 1, 2000 through the conclusion of this matter (the "Class Period"), Korean Air and Asiana and their co-conspirators resided, transacted business, were found, or had agents in this district, and a substantial part of the events giving rise to Plaintiffs' claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district. Venue is particularly appropriate in this judicial district for the following reasons:

(a) Korean Air has its United States headquarters in this district, in Los Angeles County, California;

(b) Asiana has its United States headquarters in this district, in Los Angeles County, California;

(c) A large volume of Korean Air and Asiana passengers depart from or arrive at Los Angeles International Airport ("LAX"). According to available statistics maintained by the Los Angeles Department of Airports, it is estimated that in 2005 the number of Korean Air passengers departing from LAX exceeded 24,000 per

month and the number of Asiana passengers departing from LAX exceeded 13,000 per month; and

(d) A *Wall Street Journal* article dated August 2, 2007 revealed that Korean Air, *inter alia,* "conspired to fix fares targeted for ethnic Koreans in the U.S." Outside of the Republic of Korea ("Korea"), Los Angeles hosts the largest concentration of ethnic Koreans anywhere in the world. Furthermore, according to 2000 United States census data, 260,151 Korean-Americans – 25% of the total number of Koreans in entire United States –live in the Central District of California, as opposed to, for example, 59,477 Koreans in the Northern District of California and 44,243 in the Western District of Washington. Thus Defendants and their co-conspirators' wrongful conduct was heavily concentrated in this District, and Defendants and their co-conspirators' wrongful conduct likely affected a disproportionate number of members of the Classes located in this District.

## NATURE OF ACTION

3. This action on behalf of ***indirect purchasers*** of Korean Air and Asiana passenger tickets arises from a long-running conspiracy, the primary purpose of which was to suppress and eliminate competition by fixing the "H" class wholesale fares, and one or both components of passenger fares ("Passenger Airfares") on airline tickets from the United States to Korea.

4. Defendants sell airline tickets for flights between the United States and Korea.

5. Defendants indirectly sold the tickets to Plaintiffs and members of the Classes during the Class Period with a fuel surcharge.

6. Defendants illegally conspired to impose a surcharge on members of the Classes, purportedly to compensate the airline for the cost of fuel ("fuel surcharge").

7. Defendants fixed and sold "H" class passenger tickets to travel agents and consolidators in the United States who then resold these tickets, primarily to Korean-Americans living in urban areas with large Korean populations.

8. Defendants acted in concert and conspired to artificially inflate the prices of Passenger Airfares by fixing prices for Passenger Airfares.

9. As detailed above, venue is appropriate for this action in the Central District of California because LAX, one of the largest international airports in the United States, is by far the largest United States gateway to Korea, and the location of the majority of Defendants' United States business. More members of the Classes live in the Central District of California than in any other district in the United States.

10. Plaintiffs bring this action to recover treble damages and injunctive relief for violations of federal and state antitrust, unfair competition, consumer protection laws, and restraint of trade.

11. Plaintiffs bring this action on behalf of the following classes:

(a) Indirect Purchaser State Class - All persons and entities who reside in Arizona, California, District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, Washington, or Wisconsin (excluding governmental entities, Defendants and their co-conspirators, including predecessors, subsidiaries, affiliates, and business partners) who indirectly purchased Passenger Airfares in the United States that included at least one flight segment between the United States and Korea from Defendants during the Class Period.

(b) Cartwright Act Class – All persons and entities (excluding governmental entities, Defendants and their co-conspirators, including predecessors, subsidiaries, affiliates, and business partners) who indirectly purchased Passenger Airfares in the United States that included at least one flight segment between the United States and Korea from Defendants during the Class Period.

(c) Sherman Act Injunctive Relief Class – All persons and entities (excluding governmental entities, Defendants and their co-conspirators, including predecessors, subsidiaries, affiliates, and business partners) who indirectly purchased

Passenger Airfares in the United States that included at least one flight segment between the United States and Korea from Defendants during the Class Period.

(d) Sherman Act Damages Class – All persons and entities (excluding governmental entities, Defendants and their co-conspirators, including predecessors, subsidiaries, affiliates, and business partners) who indirectly purchased in the United States Passenger Airfares that included at least one flight segment between the United States and Korea from Defendants during the Class Period via a vendor that: (1) marks up the cost of Passenger Airfares by a fixed amount in a manner functionally equivalent to a cost-plus contract; (2) separately bills one charge for the cost of airfare that is determined by Defendants distinct from other charges, mark-ups, fees, and commissions that are not paid to defendants; or (3) is owned or controlled by Defendants or their co-conspirators.

12. At all relevant times, Defendants sold Passenger Airfares to airline passengers traveling between the United States and Korea.

13. During the Class Period, Defendants agreed, combined, and/or conspired with each other to fix, raise, maintain, and/or stabilize the prices of Passenger Airfares. As a result of Defendants' unlawful conduct and conspiracy, Plaintiffs and other members of the Classes paid non-competitive and artificially high prices for Passenger Airfares and thereby have been damaged.

## THE PARTIES

14. Plaintiff Soon Ja Chun ("Chun") is a resident of Queens County, New York. During the Class Period, Chun purchased one or more round-trip tickets to Korea from a travel agent and/or ticket consolidator located in the United States, and indirectly from one or more of the Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged in this complaint.

15. Plaintiff Bernard Jung Kim ("Kim") is a resident of Queens County, New York. During the Class Period, Kim purchased one or more round-trip tickets to Korea from a travel agent and/or ticket consolidator located in the United States, and

indirectly from one or more of the Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged in this complaint.

16. Plaintiff Elizabeth Bahn ("Bahn") is a resident of Los Angeles County, California. During the Class Period, Bahn purchased one or more round-trip tickets to Korea from a travel agent and/or ticket consolidator located in the United States, and indirectly from one or more of the Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged in this complaint.

17. Defendant Korean Air is a foreign airline with its world headquarters located at Korean Air Operations Center, 1370 Gonghang-Dong, Gangseo-Gu, Seoul, Korea 157-712. Korean Air's United States headquarters is located in Los Angeles, California. Korean Air's United States "Passenger" headquarters is located at 1813 Wilshire Boulevard, 4th Floor, Los Angeles, California 90057. Korean Air's United States "Cargo" headquarters is located at 6101 West Imperial Highway, Los Angeles, California 90045. Korean Air was established in 1969 and now conducts international air transportation in 37 countries, including flights to and from Korea and this District.

18. Defendant Asiana is a foreign airline with its world headquarters located at Asiana Town, Kangseo P.O. Box 98 #47, Osae-Dong, Kangseo-Ku Seoul, Korea. Asiana's United States headquarters is located at 3530 Wilshire Boulevard, Los Angeles, California 90010. Asiana was established in 1988 and now conducts international air transportation to 17 countries, including flights to and from Korea and this District.

## UNNAMED CO-CONSPIRATORS

19. At all relevant times, other airlines or entities willingly conspired with Defendants in its unlawful restraint of trade, by participating in, and performing acts and making statements in furtherance of, the unlawful actions alleged in this complaint. All allegations against Defendants are also alleged against these unnamed co-conspirator(s), as though fully set forth herein.

**AGENTS**

20. The acts alleged to have been committed by Defendants were authorized, ordered, or performed by their directors, officers, managers, agents, employees, or other representatives while actively engaged in the management, direction, control, or transaction of their business or affairs. At all relevant times, each Defendant was an agent of the other Defendant or alleged co-conspirators, and in doing the acts alleged, was acting within the course and scope of such agency. Each Defendant ratified and authorized the wrongful acts of each of the Defendants and their co-conspirators.

**FACTUAL ALLEGATIONS**

21. Throughout the Class Period, contracts, invoices for payment, payments, and other documents essential to the provision of Passenger Airfares were transmitted in interstate and international commerce between and among offices of Defendants, their co-conspirators and their customers located in various states.

22. Throughout the Class Period, Defendants transported substantial numbers of passengers, in a continuous and uninterrupted flow of interstate and international commerce, between various airports in the United States and Korea.

23. Throughout the Class Period, the business activities of Defendants in connection with the alleged wrongful conduct were within the flow of, and substantially affected, interstate and international trade and commerce.

24. Korean Air is the largest passenger carrier between the United States and Korea, averaging more than $250 million per year on those flights. Korean Air transacts the majority of its United States business in California, including the majority of sales of international Passenger Airfares.

25. Asiana is the second largest passenger carrier between the United States and Korea and transacts the majority of its United States business in California, including the majority of sales of international Passenger Airfares.

26. Defendants' unlawful activities, as described in this complaint, took place within and affected the flow of interstate commerce of Passenger Airfares for

consumers located in states other than where Defendants are located, as well as throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international commerce.

27. Defendants operate multiple direct international flights to and from LAX, including daily flights departing from Los Angeles to destinations in Korea. The Los Angeles Department of Airports estimated that over 24,000 Korean Air and 13,000 Asiana passengers departed from LAX monthly during 2005 alone.

28. Defendants' conspiracy to fix or maintain the pricing of Passenger Airfares and its components, including fuel surcharges, took place in the State of California insofar as Defendants transacted passenger air transportation business in California and/or targeted members of the ethnic Korean community in California, which is the largest ethnic Korean community in the United States. The majority of Defendants' commerce with respect to Passenger Airfares emanates from or was transacted in California. Plaintiffs and members of the Classes who purchased Passenger Airfare were damaged by Defendants' anticompetitive conduct.

**The Manner and Means of the Conspiracy**

29. On Passenger Airfares, Defendants levied what were deceptively labeled "fuel surcharges" that did not actually approximate the changing costs of fuel. Instead, the "fuel surcharges" were a mechanism by which Defendants could and did impose supra-competitive prices on Passenger Airfares, and further monitor each others' compliance with the illegal agreement.

30. For purposes of forming and carrying out the alleged combination and conspiracy, Defendants' unfair activities included, among other things:

(a) Participating in meetings, conversations, and communications in the United States to discuss prices to be charged on flights between the United States and Korea and the "H" class wholesale fares on passenger tickets for flights between the United States and Korea;

(b) Setting prices, during those meetings, conversations, and communications, for Passenger Airfares on flights between the United States and Korea;

(c) Levying passenger and wholesale consolidator fares on flights between the United States and Korea in accordance with the agreements reached; and

(d) Engaging in meetings, conversations, and communications in the United States for the purpose of monitoring and enforcing adherence to the agreed-upon retail and wholesale fares.

**Korean Air Pled Guilty to Criminal Charges of Price Fixing Brought by the United States Department of Justice**

31. As part of its Antitrust Division's ongoing investigation into the air transportation industry, the United States Department of Justice ("DOJ") issued a Criminal Information on August 1, 2007 charging Korean Air with conspiring with an unnamed co-conspirator from January 2000 to July 16, 2006, to fix prices charged to their customers for passenger flights between the United States and Korea.

32. In an August 2, 2007 article in the *The Straits Times*, entitled "Korean Air apologizes over price-fixing," Korean Air attorney Ahn Yong-Seok confirmed the plea agreement and announced that Korean Air "apologizes to shareholders and customers for causing trouble." Ahn stated that Korean Air's compliance officer would ensure that Korean Air would abide by United States and global fair trade rules in the future through campaigns and by promoting education.

33. In an article in the *Korean Times* on August 2, 2007, Korean Air is quoted as saying it is too early to specify its position about compensation to the victims of the price-fixing conspiracy.

34. Under its plea agreement with the DOJ, Korean Air has agreed to cooperate with the DOJ's ongoing investigation into price-fixing in the air transportation industry.

**Asiana Airlines Is Korean Airlines' Co-Conspirator**

35. Asiana, the major competitor of Korean Air, is under investigation in Europe, Asia, and the United States for similar antitrust violations.

36. In February 2006, it was announced that the Korean Fair Trade Commission ("KFTC") had raided the offices of Korean Air as well as Asiana as part of an investigation into fuel surcharges relating to probes in Europe and the United States.

37. In its guilty plea, Korean Air admitted participation in a conspiracy with another trans-Pacific passenger airline, the primary purpose of which was to suppress and eliminate competition for Passenger Airfares on flights from the United States to Korea. Korean Air admitted that it engaged in discussions and attended meetings with representatives of another trans-Pacific airline in furtherance of the conspiracy to fix the prices of Passenger Airfares.

38. William Mercer, Acting Associate Attorney General for the DOJ commented, "Korean Air and their co-conspirators got together and agreed to raise prices for passenger and air cargo fares, American consumers and businesses ended up picking up the tab for their illegal conduct. . . ."

39. Korean Air has also pled guilty to illegal price-fixing on air cargo fares between the United States and Korea, and Asiana is one of the companies targeted by the United States and European antitrust authorities in the same investigation of air cargo price-fixing.

40. In its article on the Korean Air guilty plea, *The Korea Times* reported on August 2, 2007 that a spokesperson for "Asiana, another Korea suspect, said it is waiting for a ruling" from the DOJ and "had supplied requested information to the authorities."

41. On August 23, 2007, Korean Air appeared in the United States District Court for the District of Columbia and formally pled guilty to criminal antitrust

violations for its role in price-fixing conspiracies concerning both air cargo and air passenger transportation. Korean Air paid a criminal fine of $300 million dollars.

42. On February 15, 2008, counsel for Asiana confirmed to this Court that the United States federal grand jury investigation is ongoing.

43. Publicly-available circumstantial economic evidence, including parallel pricing and "plus factors" well recognized in both case law and mainstream economic journals, demonstrate that Asiana conspired with Korean Air to set passenger fuel surcharges.

44. Asiana's fuel surcharges were ***identical*** to admitted fuel surcharge price-fixer Korean Air. The two instituted and continuously increased, in near perfect lockstep, identical fuel surcharges. For example, Defendants both charge $65 for a one-way flight from LAX to Korea, both charge $52 for a one-way flight from Korea to LAX, and both raised their fuel surcharges by identical amounts in May 2007.

45. Korean Airlines and Asiana are the two major airlines providing air transportation between the United States and Korea. Together they function as a duopoly. Thus Korean Air, the admitted price-fixer, has a far stronger incentive to fix prices with Asiana as compared to the small number of minor players in the United States/Korea Passenger Airfare market.

46. Korean Air and Asiana are both members of the Association of Asia Pacific Airlines ("AAPA"), a trade association that has been in existence for more than 40 years. AAPA's purposes include "foster[ing] close cooperation" and "enhanc[ing] the role of major airlines . . . for international cooperation and growth." This common association facilitated the exchange of information about pricing and market conditions between Korean Air and Asiana. During the Class Period, key topics at AAPA meetings included fuel costs, cost containment and effects on profitability.

47. Korean Air and Asiana have a history of collusive and anticompetitive behavior in other markets. In 2001, the KFTC fined Korean Air and Asiana for

conspiring to set domestic passenger air transportation prices in Korea. The KFTC found that the timing and extent of the airlines' domestic price increases indicated prior agreement among the Defendants. Korean Air was fined 1.77 billon in Korean currency and Asiana was fined 1.26 billion in Korean currency.

48. The market for flights between the United States and Korea is highly concentrated and dominated by the Defendants. Defendants operate ***more than 90%*** of the direct flights between the United States and Korea, including a ***100% market share*** of direct flights on the single most important and lucrative route, LAX to Seoul.

49. Demand for flights between the United States and Korea is inelastic at competitive prices and was inelastic at the onset of the conspiracy.

50. Airline fares are a nondurable product, so consumers are unable to "stock up" on airline flights while waiting out periods of high prices, decreasing their bargaining power relative to the Defendants, and increasing the gain to collusion on the part of the Defendants. Further, Defendants can and do quickly match changes in each others' prices, which they publish and monitor regularly, thereby greatly facilitating their conspiracy.

51. The cost structures of the two Defendants are similar, making it easier for them to collude.

52. Substantial barriers to market entry exist, including the cost of both international jets and financing for international jet purchases, limited terminal space in major United States and Korean airports, limited available flight paths, and regulatory barriers in both the United States and Korea. Viable entry into the market would require years of planning and involve tens of millions of dollars in cost.

**Defendants Fraudulently Concealed Their Unlawful Conduct**

53. Throughout the Class Period, Defendants affirmatively and fraudulently concealed their unlawful conduct against Plaintiffs and the Classes.

54. Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating

the antitrust laws until shortly before the enforcement action was announced. Nor could Plaintiffs and the members of the Classes have discovered the violations earlier than that time because Defendants conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection. The conspiracy was by its nature self-concealing.

55. Only on or about August 1, 2007, when the DOJ announced Korean Air's guilty pleas and criminal fines with regard to their price fixing of Passenger Airfares, was the existence of the conspiracy disclosed to the public. Plaintiffs and the members of the Classes could not have discovered the unlawful conduct at an earlier date through the exercise of reasonable diligence because of Defendants' active and purposeful concealment of its unlawful activities.

56. With respect to Passenger Airfares, Defendants engaged in a successful and illegal price-fixing conspiracy that they affirmatively concealed in at least the following ways:

(a) By agreeing among themselves not to discuss publicly or otherwise reveal the nature and the substance of the acts and communications in furtherance of their illegal scheme;

(b) By engaging in secret meetings, conversations, and communications to further their illicit cartel; and/or

(c) By giving false and pretextual reasons for their pricing of Passenger Airfares and their components, including fuel surcharges, for the increases in those prices during the Class Period, and by describing such pricing and increases falsely as being the result of external costs rather than collusion.

57. As a result of Defendants' concealment of their conspiracy, Plaintiffs and the members of the Classes assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiffs and the members of the Classes.

## CLASS ACTION ALLEGATIONS

58. Plaintiffs bring this action on their own behalf and as a class action on behalf of the Classes defined herein.

59. The Plaintiffs are members of both the damages classes and the injunctive relief class, because they indirectly purchased Passenger Airfares from Defendants during the Class Period and will buy Passenger Airfares in the future.

60. Because such information is in the exclusive control of Defendants, Plaintiffs do not know the exact number of Class members. However, based on estimated passenger flight volume information and due to the nature of trade and commerce involved, Plaintiffs believe that members of the Classes number at least in the tens of thousands and are sufficiently numerous so that joinder of all members of the Classes is impracticable.

61. There are questions of law and fact common to the Classes, including:

(a) Whether Defendants engaged in a combination or conspiracy with their conspirators to fix, raise, maintain, and/or stabilize Passenger Airfares, including fixing the price of fuel surcharges on passenger air transportation;

(b) The duration of the conspiracy and the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

(c) Whether Defendants violated §1 of the Sherman Act and applicable provisions of California and other state law;

(d) Whether Defendants' conduct caused injury to the businesses or property of Plaintiffs and the members of the Classes;

(e) The effect of Defendants' conspiracy on Passenger Airfares charged during the Class Period;

(f) Whether Defendants fraudulently concealed the alleged conspiracy so as to equitably toll any applicable statutes of limitation;

(g) Whether damages can be demonstrated on a class-wide basis;

(h) The appropriate measure of damages sustained by Plaintiffs and the members of the Classes; and

(i) Whether the Injunctive Relief Class is entitled to injunctive relief to prevent the continuation or furtherance of the violations alleged herein.

62. Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the Classes and the relief sought is common to the Classes.

63. Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs also have no interests that are antagonistic to other members of the Classes and have retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent them and the Classes.

64. The prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

65. Defendants have acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

66. The questions of law and fact common to the Classes predominate over any questions affecting only individual members.

67. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged members of the Classes is impracticable. The damages suffered by individual members of the Classes are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Absent the availability of class action procedures, it would not be feasible for individual members of the Classes to redress the wrongs done to them. Even if each class member could afford individual litigation, the court system could not. The class action device presents

fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

**INJURY, LOSS, AND DAMAGE TO PLAINTIFFS AND THE CLASSES**

68. The combination and conspiracy had the following effects, among others:

(a) Competition in the sale of Passenger Airfares was restrained, suppressed or eliminated;

(b) Plaintiffs and the members of the Classes were deprived of the benefits of free and open competition in their purchases of Passenger Airfares in the United States and worldwide;

(c) The prices that Defendants charged and that Plaintiffs and the members of the Classes indirectly paid for Passenger Airfares were fixed, raised, maintained and/or stabilized at artificially high and non-competitive levels; and

(d) Plaintiffs and the members of the Classes paid more for Passenger Airfares in the United States and worldwide than they would have paid in a competitive marketplace absent Defendants' price-fixing conspiracy.

69. As a direct and proximate result of Defendants' illegal conspiracy, Plaintiffs and the members of the Classes have been injured and damaged in their business and property in an amount to be determined according to proof.

**FIRST CLAIM FOR RELIEF**

**For Violations of the Cartwright Act**
**On Behalf of the Cartwright Act Class**

70. Plaintiffs incorporate and reallege each and every allegation set forth in the preceding paragraphs of this complaint.

71. In the United States, Defendants' contract, combination, trust, or conspiracy emanated from, was centered in, carried out, effectuated, and perfected mainly within the State of California, and Defendants' conduct within California injured all members of the Class throughout the United States. A large plurality of Cartwright Act Class members reside in California and purchased their tickets in

California. By a substantial margin, more harm was suffered within California by California residents than any other state. Both Defendants have their North American headquarters and a majority of their United States operations in California. A majority of flights between the United States and Korea originate in California. Therefore this claim for relief under California law is brought on behalf of all members of the Class.

72. Beginning at least as early as January 1, 2000, Defendants entered into and engaged in a continuing unlawful trust in restraint of trade and commerce described above in violation of §16720 of the California Business and Professions Code to fix, raise, stabilize, and maintain prices of Passenger Airfares and their components, including fuel surcharges, at supra-competitive levels.

73. The violations of §16720 of the California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of Passenger Airfares.

74. For the purpose of forming and effectuating the unlawful trust, Defendants' unlawful activities included, but were not limited to, the acts, practices, and course of conduct set forth above and the following:

(a) To fix, raise, maintain, and stabilize the price of Passenger Airfares sold to passengers and their components, including fuel surcharges; and

(b) To fix, raise, maintain, and stabilize the price of "H" class wholesale fares for tickets charged to travel agents and their components, including fuel surcharges.

75. The combination and conspiracy alleged above had, among other things, the following effects:

(a) Competition in the sale of Passenger Airfares was restrained, suppressed and/or eliminated in the State of California and throughout the United States;

(b) Wholesale prices for Passenger Airfares sold by Defendants were fixed, raised, maintained, and stabilized at artificially high, non-competitive levels in the State of California and throughout the United States; and

(c) Plaintiffs and the other members of the Class paid supra-competitive, artificially inflated prices for Passenger Airfares.

76. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the members of the Class were injured in their business and property in that they paid more for Passenger Airfares than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of §16720 of the California Business and Professions Code, Plaintiffs seek treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to §16750(a) of the California Business and Professions Code.

77. Defendants levied deceptively-labeled fuel surcharges on Passenger Airfares that did actually approximate the changing costs of fuel, but instead, the fuel surcharges were a mechanism by which Defendants could impose supra-competitive prices on Passenger Airfares, create an illicit profit center and further monitor each others' compliance with the illegal agreement.

## SECOND CLAIM FOR RELIEF

### For Violation of §1 of the Sherman Act
### On Behalf of the Sherman Act Injunctive Relief Class

78. Plaintiffs reallege and incorporate by reference each of the allegations set forth above.

79. Beginning at a time presently unknown to Plaintiffs, but at least as early as 2000 and continuing through the present, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for Passenger Airfares and their components sold in the United States in violation of §1 of the Sherman Act.

80. For the purpose of forming and effectuating the unlawful trust, Defendants' unlawful activities included, but were not limited to, the acts, practices, and course of conduct set forth above and the following:

(a) To fix, raise, maintain, and stabilize the price of Passenger Airfares sold to passengers and their components, including fuel surcharges; and

(b) To fix, raise, maintain, and stabilize the price of "H" class wholesale fares for tickets charged to travel agents and their components, including fuel surcharges.

81. The combination and conspiracy alleged above had, among other things, the following effects:

(a) Competition in the sale of Passenger Airfares was restrained, suppressed and/or eliminated;

(b) Wholesale prices for Passenger Airfares sold by Defendants were fixed, raised, maintained, and stabilized at artificially high, non-competitive levels; and

(c) Plaintiffs and the other members of the Class paid supra-competitive, artificially inflated prices for Passenger Airfares.

82. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the members of the Class were injured and will continue to be injured in their business and property by paying more for Passenger Airfares than they otherwise would have paid in the absence of Defendants' unlawful conduct.

83. Plaintiffs and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

**THIRD CLAIM FOR RELIEF**

**For Violation of Its Respective State Antitrust and Unfair and Deceptive Acts and Practices Statutes On Behalf the Indirect Purchaser State Class**

84. Plaintiffs reallege and incorporate by reference each of the allegations set forth above.

85. Defendants' conduct as alleged herein violates the antitrust and/or unfair and deceptive acts and practices laws of each of the following jurisdictions:

(a) **Arizona**: The aforementioned practices by Defendants were and are in violation of the Arizona Uniform State Antitrust Act, Arizona Revised Statutes §44-1401, *et seq*.;

(b) **California**: The aforementioned practices by Defendants were and are in violation of the Cartwright Act, California Business and Professions Code §16700, *et seq*.; and the Unfair Competition Law, California Business and Professions Code §17200, *et seq*.;

(c) **District of Columbia**: The aforementioned practices by Defendants were and are in violation of the District of Columbia Antitrust Act, District of Columbia Annotated Code §28-4501, *et seq*.; and the District of Columbia Consumer Protection Act, District of Columbia Code Annotated §§28-3901, *et seq*.;

(d) **Florida**: The aforementioned practices by Defendants were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §501.201, *et seq*.;

(e) **Iowa**: The aforementioned practices by Defendants were and are in violation of the Iowa Competition Law, Iowa Code §553.1, *et seq*.;

(f) **Kansas**: The aforementioned practices by Defendants were and are in violation of the Kansas Unfair Trade and Consumer Protection Act, Kansas Statutes Annotated §50-101, *et seq*.;

(g) **Maine**: The aforementioned practices by Defendants were and are in violation of the Maine Regulation of Trade Law of 1954, Maine Revised Statutes Annotated, Title 10, §1101, *et seq*., and the Maine Unfair Trade Practices Act, Maine Revised Statutes Annotated, Title 5, §205-A, *et seq*.;

(h) **Michigan**: The aforementioned practices by Defendants were and are in violation of the Michigan Antitrust Reform Act, Michigan Compiled Laws §445.772, *et seq*.;

(i) **Minnesota**: The aforementioned practices by Defendants were and are in violation of the Minnesota Antitrust Act of 1971, Minnesota Statutes §325D.49, *et seq*.;

(j) **Nebraska**: The aforementioned practices by Defendants were and are in violation of the Nebraska Consumer Protection Act, Nebraska Revised Statutes §59-1601, *et seq*.;

(k) **Nevada**: The aforementioned practices by Defendants were and are in violation of the Nevada Unfair Trade Practice Act, Nevada Revised Statutes §598A.010, *et seq*.;

(l) **New Mexico**: The aforementioned practices by Defendants were and are in violation of the New Mexico Antitrust Act, New Mexico Statutes Annotated §57-1-1, *et seq*.; and the New Mexico Unfair Practices Act, New Mexico Statutes Annotated §57-12-3;

(m) **New York**: The aforementioned practices by Defendants were and are in violation of The New York consumer protection act, New York General Business Law §349; and New York common law against restraints of trade. Plaintiffs do not seek treble damages, special damages or penalties under General Business Law §349;

(n) **North Carolina**: The aforementioned practices by Defendants were and are in violation of the North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §75-1, *et seq*.;

(o) **North Dakota**: The aforementioned practices by Defendants were and are in violation of North Dakota's antitrust law, North Dakota Century Code §51-08.1-01, *et seq*.;

(p) **South Dakota**: The aforementioned practices by Defendants were and are in violation of South Dakota's antitrust law, South Dakota Codified Laws §37-1-3.1, *et seq*.;

(q) **Tennessee**: The aforementioned practices by Defendants were and are in violation of the Tennessee Trade Practices Act, Tennessee Code Annotated §47-25-101, *et seq.*;

(r) **Vermont**: The aforementioned practices by Defendants were and are in violation of Vermont antitrust law, Vermont Statutes Annotated, Title 9, §2451, *et seq.*;

(s) **West Virginia**: The aforementioned practices by Defendants were and are in violation of the West Virginia Antitrust Act, West Virginia Code, Chapter 47, Article 18, §1, *et seq.*;

(t) **Washington**: The aforementioned practices by Defendants were and are in violation of the Washington Consumer Protection Act, Rev. Code Wash. (ARCW) §19.8.6010, *et seq.*; and

(u) **Wisconsin**: The aforementioned practices by Defendants were and are in violation of the Wisconsin Antitrust Act, Wisconsin Statutes §133.01, *et seq*.

## FOURTH CLAIM FOR RELIEF

### For Violation §1 of The Sherman Act
### On Behalf of The Sherman Act Damages Class

86. Plaintiffs incorporate and reallege each and every allegation set forth in the preceding paragraphs of this complaint.

87. Beginning at least as early as January 1, 2000, Defendants entered into and engaged in a continuing unlawful trust in restraint of trade and commerce described above in violation of §1 of the Sherman Act, 15 U.S.C. §1, to fix, raise, stabilize, and maintain prices of Passenger Airfares and their components, including fuel surcharges, at supra-competitive levels.

88. Defendants' violations of the Sherman Act consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of Passenger Airfares.

89. For the purpose of forming and effectuating the unlawful trust, Defendants' unlawful activities included, but were not limited to, the acts, practices, and course of conduct set forth above and the following:

(a) Fixing, raising, maintaining and stabilizing the price of Passenger Airfares sold to passengers and their components, including fuel surcharges; and

(b) Fixing, raising, maintaining and stabilizing the price of "H" class wholesale fares for tickets charged to travel agents and their components, including fuel surcharges.

90. The combination and conspiracy alleged above had at least the following effects:

(a) Competition in the sale of Passenger Airfares was restrained, suppressed and/or eliminated in the State of California and throughout the United States;

(b) Wholesale prices for Passenger Airfares sold by Defendants were fixed, raised, maintained, and stabilized at artificially high, non-competitive levels in the State of California and throughout the United States; and

(c) Plaintiffs and the other Class Members paid supra-competitive, artificially inflated prices for Passenger Airfares.

91. Class members purchased their tickets indirectly from entities that were owned or controlled by Defendants or their co-conspirators, or from entities that suffered no redressable harm from Defendants' illegal acts because of cost-plus contracts or their economic equivalent, or because airfare charges were billed by the entities to Class Members individually and separately from commissions, fees, and other markups.

92. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the Class Members were injured in their business and property in that they paid more for Passenger Airfares than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of the

Sherman Act, Plaintiffs seek treble damages and the costs of suit, including reasonable attorneys' fees.

93. Defendants levied deceptively-labeled "fuel surcharges" on Passenger Airfares that did not actually approximate the changing costs of fuel, but instead, were a mechanism by which Defendants could impose supra-competitive prices on Passenger Airfares, and further monitor each others' compliance with the illegal agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

A. That this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to Plaintiffs' claims for declaratory, equitable and injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages and other monetary relief, and declaring Plaintiffs as representatives of the Classes and their counsel as counsel for the Classes;

B. That the Court adjudge and decree that the contract, combination, and conspiracy alleged in this complaint is an unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the Sherman Act, California Cartwright Act, and state antitrust and unfair and deceptive acts and practices statutes set forth herein;

C. That Plaintiffs and the Classes recover damages, including treble damages where provided by federal and state laws, and that a joint-and-several judgment in favor of Plaintiffs and the Classes be entered against Korean Air and Asiana;

D. That Defendants and their respective successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants, or in concert with them, be permanently enjoined and restrained from, in

any manner, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having similar purpose or effect in restraining competition;

E. That Plaintiffs be awarded restitution, including disgorgement of profits obtained by Defendants;

F. That the Court award to Plaintiffs and the members of the Classes their fees and costs as provided by law;

G. That the Court award to Plaintiffs and the members of the Classes pre-judgment and post-judgment interest as permitted by law, and that interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action; and

H. That Plaintiffs and the Classes are granted such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

DATED: March 3, 2008

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN
CHRISTOPHER M. BURKE
MARY LYNNE CALKINS

s/ Mary Lynne Calkins
MARY LYNNE CALKINS

655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

BECK & LEE BUSINESS TRIAL
LAWYERS
ELIZABETH LEE BECK
JARED H. BECK
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone: 305/789-0072
786/664-3334 (fax)

THE WESTON FIRM
GREGORY WESTON
5127 Lotus Street
San Diego, CA 92107
Telephone: 619/255-7098
480/247-4553 (fax)

Attorneys for Plaintiffs Soon Ja Chun,
Bernard Jung Kim, and Elizabeth Bahn

S:\CasesSD\Korean Air\CPT0049579.doc

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 3, 2008.

s/ MARY LYNNE CALKINS
MARY LYNNE CALKINS

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail: Mcalkins@csgrr.com

# Mailing Information for a Case 2:07-cv-06542-SJO-AGR

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jared H Beck**
  jared@beckandlee.com

- **Christopher M Burke**
  chrisb@csgrr.com

- **Mary Lynne Calkins**
  mcalkins@csgrr.com,e_file_sd@csgrr.com

- **Patrick J Coughlin**
  patc@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Elizabeth Lee Beck**
Beck and Lee Business Trial Lawyers
28 West Flagler Street, Suite 555
Miami, FL 33130

**Gregory S Weston**
Coughlin Stoia Geller Rudman and Robbins
655 West Broadway, Suite 1900
San Diego, CA 92101-3301

# Mailing Information for a Case 2:07-ml-01891-SJO-AGR

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Robert G Badal**
  robert.badal@hellerehrman.com
- **Lori S Brody**
  lbrody@kaplanfox.com
- **Mary Lynne Calkins**
  mcalkins@csgrr.com,e_file_sd@csgrr.com
- **J Clayton Everett**
  jeverett@morganlewis.com,ijalloh@morganlewis.com
- **Jennifer A Kagan**
  jenni@hulettharper.com
- **Susan G Kupfer**
  skupfer@glancylaw.com
- **Bethany L Marvin**
  bethany.marvin@hellerehrman.com
- **Jon L Rewinski**
  jon.rewinski@hellerehrman.com,ramara.williams@hellerehrman.com
- **Dennis Stewart**
  dstewart@hulettharper.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Laura Albee et al**
,

**James Lee**
,